Thank you. May it please the Court, my name is Mack Wilson and I'm pleased and honored to be here today representing the appellant in this case, Briar Capital. This case involves a confirmed bankruptcy plan that clearly provided for the assignment of a preference claim to a creditor, my client, Briar Capital. The insider against whom that claim was asserted, the appellee Robert Remmert, was notified of the claim's assignment, present at the confirmation hearing, raised no objection to the claim's assignment, and elected not to appeal the order confirming the plan. Post-confirmation, Briar Capital prosecuted the preference claim against Mr. Remmert in the District Court. Just before trial, Mr. Remmert belatedly asserted that the confirmed plan could not have assigned the preference claim to Briar Capital because Briar Capital was not a representative of the bankruptcy estate. Mr. Remmert asserted the justification for his belated collateral attack on the confirmed bankruptcy plan because it somehow raises subject matter jurisdiction issues. Now, against that backdrop, I want to raise several points with the panel. Initially, I want to point out that the issues before the Court today are all purely legal questions and are reviewed de novo, so the panel is considering them afresh. And the law is clear that the preference claim against Mr. Remmert was assigned to Briar Capital for two reasons. First, the text and structure of the bankruptcy code indicate that preference claims are property of the estate and can be sold. Thus, the preference claim was validly transferred to Briar Capital and can now be asserted by Briar Capital. Second, even assuming that preference claims are not property of the estate, Briar Capital is still the owner of the claim against Mr. Remmert because the order confirming the plan is valid, final, and entitled to preclusive effect. Its provisions, which include the transfer of the preference claim against Mr. Remmert to Briar Capital, cannot be collaterally attacked years later by Mr. Remmert. Well, it can't be collaterally attacked, but it also can't confer jurisdiction where there isn't any. I agree with that, Your Honor, but the— I mean, nobody contends that the claim was assigned. What Remmert contends is that the claim is valid because Briar Capital couldn't prosecute the claim. That seems to me to be distinct, but either way, I have a little trouble following the Res Judicata argument because the bankruptcy court can't, by confirming a plan, convey jurisdiction where there wouldn't be any. I disagree with that. I think the law is clear on that. There's two cases that are especially instructive here. I think first is Republic Co. v. Shoeff—Republic Supply Company v. Shoeff. In that case, there was a confirmed Chapter 11 plan that released a guarantee of the debtor, that the debtor's principle had made. The Fifth Circuit, this Court, held that even though that was possibly beyond the jurisdiction of the bankruptcy court, the confirmed confirmation plan still controlled, and those releases were effective, and the claims against the guarantor were barred. Again, then there's the Inouye-Chestnut case where a Chapter 13 plan was confirmed that provided that a lien on property that was arguably not property of the estate would be released. The Fifth—that order was not appealed. The lienor was a party to the bankruptcy proceedings. On appeal, the Fifth Circuit held that the lien was released, that they had the—even though it was arguably not part—even though—excuse me—even though that property was arguably not part of the estate and the bankruptcy court arguably did not have jurisdiction over that property, the confirmation order still controlled, released the lien, and stopped the foreclosure of—the lienor's foreclosure. Thus, even if the assignment of the preference claims was in error, or maybe the court didn't have the jurisdiction to do so, it was nevertheless transferred to Breyer Capital by the bankruptcy plan and cannot now be—and can now be asserted by Breyer Capital. To my first point that preference claims are property of the estate that can be sold, and here, that is just what happened. The bankruptcy estate sold the preference claim against Mr. Remit to Breyer Capital, and Breyer Capital is now entitled to pursue it. As a preliminary matter, this Court pointed out more that the bankruptcy code is explicit that property of the estate, including rights of actions, can be sold, and bankruptcy code provides that property of the estate can be sold either in a standalone sale under Section 363 or as part of a plan under Section 1123b-4. Thus, if preference claims are property of the estate, they can be sold. What is property of the estate is defined by Section 541 of the bankruptcy code. In our brief, we point to two specific subsections of 541 where preference claims could rest, Sections 541a-1 and a-7. 541a-1 provides that all the debtor's pre-petition legal and equitable interests become property of the estate upon commencement of a bankruptcy case, and Section 541a-7 provides that all property acquired by the estate after commencement of a bankruptcy case is property of the estate. Just over a month ago, in a Simply Essentials case, the Eighth Circuit faced this exact issue of whether avoidance actions, among them preference actions arising under Section 547 of the bankruptcy code, are property of the estate and determined that Section 551 is not ambiguous and that preference claims were included in both Sections 541a-1 and a-7. The Eighth Circuit relied on the Supreme Court's broad interpretation of 541a-1 from Whitingpools, which includes in property of the estate by the other provisions of the bankruptcy code. The Eighth Circuit interpretation accords with this Court's broad understanding of property of the estate, which was first delineated in the Mortgage America case. In fact, by holding that property of the estate includes inchoate or contingent interests held by the debtor prior to filing bankruptcy, the Eighth Circuit was echoing one of the basic holdings of this Court's Mortgage America decision, that a debtor retains an equitable interest in property transferred by an insolvent debtor. Using that premise, the Eighth Circuit held that because debtors have a right to file bankruptcy and because the commencement of a bankruptcy case gives the debtor's estate the authority to bring preference actions to recover estate property, the debtor has an inchoate interest in preference actions prior to the commencement of bankruptcy proceedings, which then become property of the bankruptcy estate upon commencement of bankruptcy proceedings under Section 541a-1. The Eighth Circuit also held that Section 541a-7 would include preference claims for similar reasons. All right. So, I mean, I follow the logic that you're laying out, but if we were to conclude that these, in fact, these claims are, in fact, property of the estate and therefore could be conveyed or sold, assigned, is what we have here, does prior capital also have to act as a representative of the estate? No, Your Honor. In other words, there seems to be a distinction in some cases, at least, where a claim is assigned and the assignee pursues the claim, but the overage goes back to the estate or the debtor or the unsecured creditors, really. So, we don't have that here. Understood, Your Honor. So, is that a distinction that makes a difference? I think there is a distinction there, because— Because prior capital is not a representative of the estate. That is 100 percent conceded. We don't want to be a representative of the estate. There's fiduciary duties that come with being a representative of the estate that we do not want. But doesn't the benefit to the estate somehow factor into this question? I think there's—I mean, the bankruptcy code is specific on what can be done with causes of action. 1123b3 says that they can be settled or retained by either the debtor, the trustee, or a representative of the estate. So, if you have a cause of action that the estate is settling or retaining, then yes, you do need to be a representative of the estate or a debtor, trustee, representative of the estate. Section 1123b4, however, also says that all property of the estate can be sold as part of a plan. And if all property of the estate can—those are two different sections. And b4 does not limit who this property can be sold to. There's no limitation on that at all. We acquired the property not as some type of representative of the estate, but independently of the estate. And we can now, therefore, assert it. I think—and I think this may go back to your earlier question as well—what they're—the argument there is that maybe you can acquire it, but then you can't assert it afterwards. That's illogical. I want— Well, it's illogical, but people buy or sell worthless claims all the time. You're taking a bet. Sure, but that—I'll say that frustrates the purpose of selling the claims in the first place. The reason that you want the estate to be able to sell the claims is to maximize the value of the estate. If you're saying that once you acquire the claim, you can't pursue them, you've destroyed all the value that the estate can possibly recover from. What value did the estate get here, given that they weren't going to get any overage? So, this is—I'll say, first, I think that's a factual matter that the Bankruptcy Court determined, but if you look at the record, the issue of—let me back up slightly. If you look at the record, in the bankruptcy case itself, there was a major contest between the secured creditor, us, Friar Capital, and the new secured creditor, Solstice Capital, over, one, our lien rights, and then, two, the value of the collateral securing our lien. That was going to be an issue at confirmation. It was settled, and by that settlement, the $500,000 in cash that was being provided by the dip lender was able to go to the secured creditors, free of our liens. We essentially forbeared from asserting our lien claim against that $500,000 in cash that was being provided by the dip lender in order to facilitate a successful reorganization. In other words, the benefit to the estate was precedent to the assignment and recovery on this claim. Yes. Yes, exactly, Your Honor. I think that was a further part of my brief, but that goes very much to the Section 550 issue of whether or not a recovery on this claim will benefit the estate. The benefit that the estate received was when Friar Capital forbeared from— The estate basically banked the benefit from the outset and basically left the claim to you, which is pretty standard when you— Yes. —assign a claim or something like that. The benefit to the estate was, again, they sort of locked in a value of a disputed and risky claim or whatever the language is. Exactly. Exactly, Your Honor. I know you said you were following the logic, but I wanted to make clear that I think if you read the Court's case law closely, it has already implicitly decided that preference claims are property of the estate. In McFarland v. Lay, this Court held that preference claims can be retained in a Chapter 11 plan pursuant to a Section 1123b3 of the Bankruptcy Code, which we discussed a little earlier. But Section 1123b3 provides that only a claim belonging to the debtor or the estate can be retained. It therefore must follow that since preference claims can be retained, they must belong to either the debtor or the estate. And in this case, under Section 541, all property of the debtor is property of the estate. There are only two exceptions to that rule, the enumerated exemptions in Section 522 and the enumerated exceptions in Section 541b, and neither of those statutes include preference claims. Accordingly, preference claims must be property of the estate. I know we spoke on it briefly, Your Honors, but I wanted to go specifically to what occurred at the confirmation hearing, because I do think it's important to the preclusion analysis. I think it should be noted that Mr. Rimmert almost explicitly consented to the assignment here. The record shows that not only was Mr. Rimmert not silent at the confirmation hearing, he actually objected to the plan. His sole objection was that he wanted to limit the claims against him that were being assigned to just this claim that Breyer Capital is now asserting. And the reason that Breyer Capital is only bringing this claim against Mr. Rimmert today is because Mr. Rimmert prevailed on that objection in the Bankruptcy Court. He then consented to confirmation of the plan, including the transfer of the preference lawsuit to Breyer Capital. He cannot now claim that a transfer that he was a party to and that was affected by the Bankruptcy Court's confirmation order did not occur. And I'll cede the rest of my time to the Court. Thank you. All right. Thank you, sir. All right. We're here on behalf of Mr. Rimmert. Is it Vi or V? Vi, Your Honor. May it please the Court, George Vi for the appellee, Robert Rimmert. So, in answer to the Court's questions, my friend on the other side has said we're not trying to claim we're the representative of the estate. And I understand their interest in sort of abandoning that issue. There's even some references in the brief to say, one in the opening brief of the appellant to say, we're not challenging that part of the district court's ruling, which is an unusual position for an appellant to take, that it will not challenge part of the reasoning of the district court dismissing the case on my brief, the appellant says, what I'm advancing here was not considered by the district court. But even with those statements in the brief, as I listened to the argument of my friend this morning, what I hear is, in an answer to the Court's question, we don't have to show, the appellant says, we don't have to show we're a representative of the estate. That's irrelevant to the sale. Once these rights came into the bankruptcy estate, they could be sold, period. Obviously, the district court, Judge Hanks had a different view of it, and again, it went back to a standing issue. So, first, to the extent there's been these discussions about collateral attack or res judicata or what Mr. Rimmert did or didn't do to confirmation plan hearing, that's irrelevant to standing. That's irrelevant to jurisdiction. If this particular purported sale of the action of the trustee in avoidance does not confer standing on the appellant, then there is no jurisdiction in the district court as Judge Hanks held. Respectfully, the appellant can't avoid this representative of the estate issue. I think that this Court's decision in Moore, which was cited by the district court here, the decision in Moore, which was cited, I don't think fully and completely, by the Eighth District Court, which I responded to yesterday on the 28J letter, the In Re. Simply Essentials Court also looked at this decision in Moore. Moore made a distinction between the actions that the trustee has that are swept into the bankruptcy estate that the trustee succeeds to. 545 claims that are pre-existing claims owed by a debtor or owed by a purchaser become the actions of the trustee become property of the estate. Those types of claims that existed before the bankruptcy under state law versus the statutory trustee's power under the Bankruptcy Code and that with respect to those causes of action that are granted to the trustee under the Bankruptcy Code after the bankruptcy and pursuant to this statutory duty, that those require that you must be the debtor in possession, a trustee, or a representative of the estate. And counsel mentioned several times Section 1123B3B, a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish two elements, that it has been appointed, no contest here, that it is a representative of the estate. And clearly that question was one of the two questions that drove the decision of Judge Hanks in this case. But is it the right question? Yes, I think so, Your Honor. If this claim is property of the estate and property can be sold or conveyed, do they have to be representatives? They do. And the reason that they do, there's several. One is that their argument is that they can obtain standing to assert the trustee's powers on their own behalf. And the statute says to do so they must be a representative of the estate. And the fact that that property is among the property of the bankruptcy estate doesn't set aside the fact that it was statutorily created for the trustee and that the purpose of creating that for the trustee was to create a means for equitable distribution among all the creditors of the bankruptcy estate. So the property is not conveyable? Your Honor? The property is not conveyable? It was not. No, I mean, I'm talking about as a general matter. Under the law, a claim like this can't be assigned or conveyed. It could. A claim of avoidance that the trustee has could be conveyed, arguably. I mean, the Moore case suggests, no, that property can't be sold. That's a statutory duty of the trustee. It must be exercised by the trustee. I read the case and I read Judge Hanks' opinion to say, if you can show you're a representative of the estate, we will allow you to act in the same capacity. You're essentially acting in the same capacity as the trustee to obtain a recovery. So certainly, if you had a situation where the trustee cannot afford to prosecute an avoidance claim, it's a valuable claim of the estate. It could bring money into the benefit of all the creditors of the estate. But isn't that what happened here? No, because here, it did not happen because they weren't a representative of the estate under the facts that were set out in the opinion. And also, is it that they are not refunding any overage amount? Correct, Your Honor. Okay. That they were the only secured creditor, that they are the only Class II claimant. But what of counsel opposite's argument that effectively, the debtor got the benefit up front? In other words, the debtor basically liquidated its claim for some certain. That benefited the unsecured creditors. Well, I think that . . . I just went through the opinion in somewhat detail. We cited the portions in the record. Breyer Capital had a prior claim against South Coast. It discharged that claim in exchange to receive this claim against my client, the avoidance claim. But it already was oversecured by . . . it was owed $2.5 million, and it was secured by assets of $4 million. It now gets the opportunity to recover additional funds. It has no obligation to pay back any excess funds. It would not be a recovery. And I think I can get down into the little facts, as Judge Hanks said in the opinion. I think the point is, the action would not be a recovery for the bankruptcy estate at all. It would be a recovery for a single creditor who was already oversecured, and while he can . . . But isn't that up to the bankruptcy judge to approve the plan? I mean, we can debate whether this claim is worth X or X plus 1 or X minus 20, and we can argue about, I guess, whether the secured creditor was oversecured. I mean, I appreciate the arguments as far as what happened and all that, but the bankruptcy court decided all those things by saying, okay, this looks like a deal that we can confirm and that, you know, Bar Capital will withdraw its objections and let things proceed, and so I'm having some trouble following how this didn't help the estate and move along or how we should be deciding things that sound like the bankruptcy court decided. Well, the bankruptcy court would have decided in the confirmation of the plan some aspect of this conveyance. The position we presented by the . . . There wasn't some aspect of it. The position we presented by the 12v1 motion and that Judge Hanks accepted is that, nevertheless, under these facts, it does not create standing in Breyer Capital. Well, I'm not talking about res judicata. I'm just talking about all the things, the sort of aspects underlying this, your position, that Breyer Capital was oversecured, therefore, this was sort of a windfall, or it's a claim that's just given to them and they don't have to refund, so they're not a representative of the estate. It doesn't sound like that's an issue, but I guess the question, I guess, is if this is property of the estate and the bankruptcy court sort of blessed this whole arrangement and we conclude that this property can be conveyed, what's the problem? The problem is a jurisdictional one that it doesn't . . . as a signee. There is a jurisdictional problem if it lacks standing to do so because the court concludes that they must establish not only that they purchased the property, but that with respect to the avoidance claims of the trustee, that they remain a representative of the estate. So it's a both and. It's a both and. They've got to be both the representative of the estate and hold the claim as a signee. Yes, and it does not matter, in my estimation, it does not matter that the bankruptcy court may have not . . . may have concluded that the conveyance would be appropriate under the confirmed plan if, in fact, the undisputed record before the court for purposes of 12B1 shows that they're not a representative of the estate and, therefore, they would lack standing and, therefore, again, not hearkening back to res judicata, simply standing . . . they must always have standing and there must always be subject managers. Why didn't Remert file this motion immediately? I was not trial counsel. I'm just curious. It waited until like a week before trial and there were four years lapse. Yes. I was engaged to work on the court's charge in anticipation of the trial that was about to be held at which point I saw the issue. At that point, the 12B1 motion was filed and then Judge Hanks abated that trial setting. It took about a month, I believe, to look at the issue and then issued the opinion. I was not involved until right before the trial and in connection with the 12B1 motion that was filed. I just wanted to comment again on this issue about why it's important that they be a representative of the estate and I guess that makes a clear issue for the court certainly as compared to my friend on the other side who says, I don't have to be a representative and I don't claim to be a representative, and the appellee who says, you must not only show that you purchased this property but that with respect to 547 avoidance claims of the trustee, you must continue to act as a representative of the estate. Here, the avoidance claim is being sold to someone who will only profit for themselves and he can make an inferential kind of argument about how there was some, in Choate I think he said, benefit to the estate but under the clear facts that were before the district court, there was no benefit to the estate, to the other creditors, to anyone else from the transaction that Briar Capital would then prosecute in their own name and that the trustees, our position obviously is that the trustees avoidance powers under 547, under 548, under 549 are unique statutory powers that are intended to benefit the estate, not any single creditor, that this particular transaction benefits one single creditor and that these are different than the other claims that these courts talk about, about free assignability and sale where the trustee has inherited the pre-bankruptcy claims of a debtor or a purchaser and that there isn't a continuing obligation to be a representative of the estate. I think this 8th Circuit case, one of the things the 8th Circuit case that they're relying on in the 28J letter talks about is we don't see a lot of cases involving this and I think one of the reasons is because under 336B, a lot of these claims can become mooted about the sale of the assets because you have to have a sale or a lease stay pending appeal otherwise, before they're addressed by an appellate court, some third party transaction has already taken place in good faith and it can't be challenged. This is different. So you had the 8th Circuit saying, you know, there are not a lot of cases here. We see the 5th Circuit's case in Moore, but they didn't really drill down to the case and see that in Moore, this court said 544B claims are unique among the trustee's avoidance powers because they don't state a cause of action. They allow the trustees to step into the shoes of some other creditor. So those are the freely assignable ones that can be purchased. But the statutory duties, 547, 548, 549, the avoidance claims like Judge Hanks considered here are different. The statute specifically creates them and we say requires that the person prosecuting that claim is doing it as a representative of the estate. And I'm not saying that somebody couldn't have a set of facts where a district court or a bankruptcy court could conclude they were acting as a representative of the estate because of the terms. So if you look at the In Re Simple Essentials case, that 8th Circuit case, I don't have my 28-J letter in front of me, but I remember in that case there's two provisions. One was there was money that was going to be paid back by the person who purchased the avoidance action to the estate and then if they got a recovery over a certain amount after costs and attorney's fees, they had to pay that back to the estate too. None of that happened here. So the 8th Circuit case was an easier set of facts to conclude that if somebody cared in that case whether they were acting as a representative to the estate, they were. And here, not only can't they show that they are the representative of the estate, they're telling the panel they don't have to and they won't show that they're a representative of the estate. So we have a clear distinction there in what ultimately we believe is a standing issue. And so the Moore case cited by the 8th Circuit, cited by the district court, referred to in the briefs, this court specifically said we are focused on the narrow ability to sell causes of action that exist independent of the bankruptcy proceeding. And these causes of action, the avoidance causes of action of the trustee, do not exist independent of the bankruptcy proceeding. They are inherent in the proceeding. They are the trustee's fiduciary duties to maximize recovery for the benefit of the bankruptcy estate, which is absent here. And even Judge Hanks, at page 12 of his opinion, cites a bankruptcy court case where they said other courts have refused to allow trustees to sell their powers to pursue avoidance actions and have not recognized that a purchaser has standing to assert the trustee's powers on their own behalf. That's exactly our position. That was the district . . . But there are cases that go the other way, too. There are cases that go the other way. And . . . If I recall, I think maybe in Counsel Office's brief, they cited a number of bankruptcy court cases that go the other way, and those, for whatever reason, didn't trickle up on appeal or what have you. I mean . . . And . . . In your judgment, what's the predominant practice? Well, I'm not sure that I can . . . I certainly have shepherdized the Moore case and looked for all the cases that cite it. I knew about the Eighth Circuit case when it was decided before the 28J letter. Again, I think even that court observed there aren't a lot of cases involving this because I think sometimes the issue gets mooted before it comes up on appeal. Counsel . . . What's the predominant in bankruptcy court? Well . . . It may not be a fair question, but . . . Yeah, I'm not sure that I can answer that on the record that's developed on 12B1. Counsel . . . My friend on the other side cites in the brief some anecdotal evidence to say it's a common practice to do so with respect if they're doing it and they're not in a factual situation in which they're acting as a representative of the bankruptcy estate, then I would suggest those cases are wrong. It's . . . and I guess I understand my point in focusing on the Moore case certainly is that there is a distinction there that was being made by the court. I think that distinction is important if not controlling here. I don't think . . . I think the Eighth Circuit reads more too broadly. Without drilling down, I think the appellant here argues more too broadly. The district court did not. The district court on the basis of Moore, on the basis of the prior distinction in Moore that all the court had held at that time was that the actions that independently exist outside of bankruptcy could be assigned. It may be that this is the first opportunity for this court to follow up on Moore and hold that with respect to the avoidance claims outside of 544B that they do need to continue to show or have the ability to show that they're acting as a representative of the estate in order to have standing to prosecute the claim and that that is a base . . . that the whole policy is consistent with what we're trying to do with respect to the issue of an equitable distribution. To that extent, Moore gives the opportunity to this panel to write on the issue and we believe that what they argue in the brief is irrelevant. I will return in a few seconds of my time to the Court if there's no other questions. All right. Thank you, sir. Thank you. Mr. Wilson, do you have a rebuttal? Thank you, Your Honors. Just a couple of points. I think most of that was to standing and the biggest issue that there is, is that the Pele is reading into the statute a requirement that any assignment of property of the estate, if it is a preference claim, has to be to a representative of the estate. The Bankruptcy Code does not say that. 1123B.4, Section 363B, say that property of the estate can be sold to anyone. It doesn't have some requirement that you need to be a representative of the estate. I'm not aware of a case law that says that the purchasers of assets of the estate need to be representatives of the estate. If Congress wanted to do that, it could. It could put that in the statute. It's not there. The Court should not read into the statute that someone who's purchasing preference actions needs to be a representative of the estate. Now, even if they're correct and you accept that as true, I actually don't . . . I don't . . . It's not the case that whether we're a representative of the estate is a subject matter jurisdiction issue. There is no question that when the case was instituted, the preference case, the debtor-in-possession, excuse me, South Coast, had standing to bring this claim. The standing existed when it brought it. The only question then is whether it transferred its ability to sue to Briar Capital. That question, that's an issue of the bankruptcy court's power to enforce an assignment under . . . Sorry. To enforce the assignment of the preference action to another party. That's not a question of whether or not there's standing to bring the claim. There was 100% standing to bring the claim when it was brought, and so the only question now is whether or not Briar Capital has actually been assigned the claim. The bankruptcy court specifically made rulings on that. That was at issue in the confirmation hearing. There was, in fact, argument on this issue of what could be assigned to Briar Capital. What of counsel Opposite's reading of the Moore case in terms of applying to claims, basically addressing claims that existed independent of the bankruptcy? I mean, is your reading of Moore too broad, or the Eighth Circuit's reading of Moore too broad? Our reading of Moore is that it's in accord with what opposing counsel said, that it only has to do with Section 544 claims, those types of claims that arise under the in-state law and then become the trustee's powers under the bankruptcy code. But our position is that the theoretical underpinnings of Moore require the same result here, because Moore finds that those powers are property of the estate. The reason that those powers are property of the estate is based on this court's Mortgage America holding, which says you've got the estate as property interests in the property transferred when the debtor was insolvent. That's the same situation here. The debtor was insolvent. It made transfers to an insider. The debtor in possession had inchoate property interests in what was transferred. And the Section 547 claim is a right of action. I mean, I agree it's a very powerful power that's given to bankruptcy estate, but it's a right of action to bring these inchoate property interests back into the estate. That can only exist with the estate. If you think about it this way, I have sometimes done, the only person who can bring a preference action to begin with is the trustee. In a preference action, he's trying to recover property of the estate, and then once that property is recovered, it's property of the estate. In every single part of that equation where the estate is using the property, it only can belong to the estate. Thank you for your time. All right. Thank you. Counsel for both sides for your briefing in August. Very interesting issue, to put it mildly. So we'll do the deep dive on it and try to sort it out. This completes the docket of orally argued cases assigned to the panel. They, along with the not orally argued cases for this week, will be submitted for decision. And with that, the panel stands adjourned. Thank you.